THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIFAYA DAWUD, | CASE NO. C17-1254-JCC |
| Plaintiff, | ORDER |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 29-1). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

**I.  BACKGROUND**

Plaintiff Kifaya Dawud is an Ethiopian-born American. (Dkt. No. 30-1 at ¶ 1.) In April 2010, Defendant Boeing hired Plaintiff as a Level 1 Activities Specialist in its Customer Relations Department, which is an administrative job that involved booking hotels, reserving event venues and catering, and managing Boeing vendor relations. (*See generally* Dkt. No. 30-1.) In July 2011, Plaintiff was promoted to a Level 2 position. (*Id.* at ¶ 9.) In 2012, Plaintiff applied to a position within Boeing as a Regional Support Specialist ("RSS"), but was not given the job. (*Id.* at ¶ 14, 16.)

Within the Customer Relations Department, Defendant has a policy of providing its employees with performance evaluations. In these evaluations, employees receive a score of 1 through 5 in different categories, where "1" indicates that the employee does not meet expectations and "5" indicates that the employee exceeds expectations. In her mid-year 2012 review, Plaintiff received five scores of "2" and one score of "1," among higher scores. (Dkt. No. 25-2 at 46–51.)

In early 2013, Plaintiff moved to the RSS position which she was initially denied. (Dkt. No. 30-1 at ¶ 23–24.) In this position, Plaintiff supported the Latin American, African, and Caribbean regions. (*Id.* at ¶ 25.) Her 2013 performance evaluation scores increased. (Dkt. No. 30-10.) In 2014, Plaintiff was issued a Corrective Action Memorandum ("CAM"). (Dkt. No. 30-1 at ¶ 31.) Plaintiff believed the CAM was unfairly issued and she appealed it through Defendant's ADR process. (*Id.* at ¶ 32–33.) As a result of ADR, Defendant reduced the length of the CAM from 12 months to 6 months. (*Id.* at ¶ 33.)

In April 2014, Plaintiff filed a formal EEO complaint. (*Id.* at ¶ 38.) Plaintiff alleged that: (1) she received a lack of support and recognition from her supervisors, (2) she was passed over for the RSS opening for which she was qualified (and then only received the position because of a hiring freeze), (3) she faced false accusations, (4) she was transferred against her wishes, and (5) she was treated less favorably than Caucasian colleagues. (*Id.*) About two weeks after filing the complaint, Plaintiff's supervisor asked about her mother's nationality and immigration status and indicated that she was aware of Plaintiff's EEO complaint. (*Id.* at ¶ 39–41.) Although sometimes Human Resources will reach out to all relevant parties in an EEO complaint (even the person that the complainant accuses of bad behavior), her manager knowing about the EEO complaint was improper because the information was divulged prematurely. (Dkt. No. 30-17 at 5–9.) As Plaintiff puts it, the EEO complaint was improperly "leak[ed]" to the parties Plaintiff was complaining about. (Dkt. No. 30-1 at ¶ 43.) Plaintiff alleges that, after she filed the EEO complaint, her performance evaluation scores fell and she was denied promotion opportunities.

(*See generally id.*)

In September 2015, Plaintiff applied and interviewed for a delivery center job. (*Id.* at ¶ 60–61.) Following her interview, the position was "recalibrated" to a Level 2 position and, as a result, the position was cancelled and reposted. (*Id.* at ¶ 61.) In 2016, Plaintiff switched from the Latin American, African, and Caribbean regions to the European region. (*Id.* at ¶ 79.) Plaintiff applied for a Level 3 Delivery Center job in September 2016, and was again not given the job. (*Id.* at ¶ 63.)

In April 2017, Defendant issued Plaintiff a Performance Improvement Plan ("PIP"), which required Plaintiff to improve certain aspects of her performance or face termination. (*Id.* at ¶ 108.) Plaintiff experienced deteriorating health, went on a leave of absence, and resigned from Boeing. (*Id.* at ¶¶ 112–14.)

Plaintiff alleges that, while at Boeing, she was subjected to and overheard various racially and/or ethnically insensitive comments about African and Middle Eastern people, countries, and food while at Boeing. (*See generally* Dkt. No. 30-1.)

Plaintiff alleges claims of discrimination, harassment, and retaliation on the basis of race, national origin, and/or religion;[1] infliction of emotional distress; and violation of her right to privacy. (Dkt. No. 1-2 at 10–12.) Specifically, Plaintiff alleges: (1) disparate treatment violations under the Washington Law Against Discrimination ("WLAD") and 42 U.S.C. § 2000e–2(a)(1), (2) retaliation under the WLAD and 42 U.S.C. § 2000e–3(a), (3) hostile work environment, (4) violation of her right to privacy, (5) negligent infliction of emotional distress ("NIED"), (6) intentional infliction of emotional distress ("IIED"), and (7) a claim for punitive damages. (*Id.*) Defendant moves for summary judgment on all claims.

## II.   DISCUSSION

### A.   Legal Standard

---

[1] Plaintiff appears to have withdrawn her religious discrimination claims. (*See* Dkt. No. 25-1 at 16; 29-1 at 17; 30 at 1.)

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if the fact "might affect the outcome of the suit under the governing law." *Id.* At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

### B. Disparate Treatment Claims

Title VII and the WLAD make it unlawful for an employer to discriminate on the basis of several protected classes, including race, national origin, and color. 42 U.S.C. § 2000e–2(a)(1); Wash. Rev. Code § 49.60.180. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action,[2] and (4) the defendant-employer treated her differently from a similarly-situated employee who does not belong to the same protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). To establish a *prima facie* case of discrimination under the WLAD, the plaintiff must show that: (1) she belongs to a protected class; (2) she was treated less favorably in the terms or conditions of her employment (3) than a similarly situated, non-protected employee, and (4) the plaintiff and the non-protected comparator were doing substantially the same work. *See Washington v. Boeing Co.*, 19 P.3d 1041, 1048 (Wash. Ct. App. 2000).

Courts use the *McDonnell Douglas* burden-shifting framework to analyze both Title VII and WLAD discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (Title VII claim); *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 529 (Wash. Ct. App. 2005) (WLAD claim). After the plaintiff establishes her *prima facie* case, the burden shifts

---

[2] The parties do not appear to dispute that Plaintiff suffered adverse employment action.

to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* Finally, if the defendant has carried its burden, the plaintiff must then prove, by a preponderance of the evidence, that the reason asserted by the defendant is a mere pretext. *Id.*

### 1. *Prima Facie* Case: Satisfactory Performance

Defendant argues that Plaintiff cannot show that she performed her job satisfactorily because: (1) the record contains evidence that many managers, internal customers and co-workers, and outside vendors believed Plaintiff's performance was unsatisfactory; (2) Plaintiff's poor performance evaluations indicate she performed her job unsatisfactorily; (3) Plaintiff's lengthy experience does not negate her unsatisfactory performance; and (4) Plaintiff's ability to succeed in some aspects of her job does not mean that, overall, her performance was satisfactory. (Dkt. No. 29-1 at 18–19.) Plaintiff counters: (1) her performance evaluation scores are not indicative of whether she performed satisfactorily because the scoring process is inherently biased and scored by supervisors who do not actually oversee the employees' work; and (2) along with one of Plaintiff's direct supervisors, many Boeing sales team members, airline customers, and vendors believed Plaintiff performed her work satisfactorily. (Dkt. No. 30 at 8–10.)

An employee's performance is measured from the employer's perspective. *See, e.g., Hedenburg v. Aramark Am. Food Servs. Inc.*, 476 F. Supp. 2d 1199, 1207 (W.D. Wash. 2007). Therefore, an employee's subjective belief about her performance is irrelevant for purposes of establishing a disparate treatment claim. *See id.* However, Plaintiff has established evidence that Plaintiff's direct supervisor and some of Plaintiff's customers, team members, and vendors found her work satisfactory. (*See* Dkt. No. 30-3–30-6; 30-11–30-13; 30-21 at 11–12, 30–31.) Although an employee's performance is measured from the employer's perspective, these positive reviews were known to Plaintiff's employer because Plaintiff solicited much of the positive feedback in anticipation of her performance evaluations. (*See generally id.*) In other words, the record contains ample evidence of both positive and negative reviews of Plaintiff's work as a Boeing

employee, which Defendant was aware.

Moreover, Plaintiff contends that the errors that Defendant points out are either not as serious as Defendant makes them seem or are not her fault. (*See* Dkt. No. 30-1 at ¶¶ 81, 82, 83, 87, 90, 92, 104, 105.) She argues that these were common mix-ups that regularly occurred within the Customer Relations Department. Plaintiff alleges that, while she was constantly reprimanded for these minor mistakes (with warnings, being issued a CAM, and being issued a PIP), her Caucasian colleagues received little or no discipline for their similar or more egregious errors.

Defendant argues that an employee need not fail in every aspect of her job in order for her performance to be deemed "unsatisfactory." *See Nelson v. Quality Food Ctrs., Inc.*, 368 F. App'x 817, 819 (9th Cir. 2010). In *Nelson*, the court found that the plaintiff excelled in customer service, but his performance evaluations indicated that "he performed poorly in 'objective' criteria such as sales, shrink, inventory, and that he consistently missed 'objective' goals such as budget and sales targets." *Id.* In *Nelson*, the plaintiff's performance was judged unsatisfactory under inherently objective criteria. In contrast to *Nelson*, Plaintiff alleges that the performance evaluation process that she underwent is inherently subjective, subject to manipulation, and performed by managers who do not regularly oversee the employees' work. (Dkt. No. 30 at 8–10.) Whether Boeing's performance evaluation process is subject to manipulation or is subjective, is a question upon which reasonable triers of fact could disagree. Therefore, based on the evidence in the record, a reasonable trier of fact could conclude that Plaintiff performed her work satisfactorily.

2. *Prima Facie* Case: Similarly-Situated Employees

Defendant argues that Plaintiff cannot show that similarly-situated employees, who were not members of Plaintiff's protected class, were treated any more favorably than Plaintiff because: (1) employees who received a higher score than Plaintiff on their performance evaluations are necessarily not "similarly-situated" to Plaintiff; (2) even if these employees are similarly-situated, Plaintiff cannot prove that they were treated more favorably than Plaintiff

because the employees were more qualified according to Boeing. (Dkt. No. 29-1 at 19–21.) With regard to Defendant's first argument, as described above, Plaintiff argues that the performance evaluation process is subjective and inaccurate and a reasonable trier of fact could find this to be true. If the performance evaluation process is inaccurate, and it ends up ranking Caucasian employees higher than non-Caucasian employees because of bias, then Defendant cannot argue that these employees are not "similarly situated" as a matter of law. Assuming then, that these comparator employees are indeed similarly situated, Plaintiff has met her minimal burden of showing that these comparators have received more favorable treatment. For example, she has shown that Caucasian employees were selected over Plaintiff for promotions and professional development opportunities and she has alleged that this was a regular occurrence. (*See generally* Dkt. No. 30-1.) These allegations are corroborated by the declarations of Fred Parham and Mara Ferrari, who allege that they were treated similarly. (Dkt. Nos. 30-14 at 7; 30-15 at 3.) Keeping in mind Plaintiff's minimal burden at this stage, a reasonable trier of fact could conclude that comparator employees are similarly situated and that they were treated more favorably than Plaintiff.

### 3. Legitimate, Nondiscriminatory Reasons

Since Plaintiff has met her *prima facie* burden, Defendant must produce legitimate, nondiscriminatory reasons for the behavior in question. *See Cornwell*, 439 F.3d at 1028. Defendant has provided evidence that Plaintiff was not promoted because of her performance deficiencies, because she did not meet existing job requirements, and because there were more qualified candidates available. (Dkt. Nos. 26, 28.) These are adequate nondiscriminatory reasons to not promote Plaintiff, who did not score as highly as other candidates on her performance evaluations. (*See* Dkt. No. 26.) Therefore, Defendant has met its burden and Plaintiff must produce sufficient evidence to raise a genuine dispute of material fact showing Defendant's stated legitimate reasons are pretextual. *See Cornwell*, 439 F.3d at 1028.

### 4. Pretext

Plaintiff may show pretext either (1) directly, "by showing that unlawful discrimination more likely motivated the employer" or (2) indirectly, "by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

As discussed in detail above, Plaintiff has alleged that the process by which employees are evaluated is inaccurate and subject to manipulation so the process is not indicative of Plaintiff's performance. She has also submitted evidence that she was more experienced than many people who received promotions and opportunities. (*See generally* Dkt. No. 30-1.) Finally, Plaintiff has provided evidence that the people responsible for making promotion and termination decisions made comments that could be construed as discriminatory. For example, Plaintiff alleges that one of her managers made a comment to her, on the day of President Trump's inauguration, that Plaintiff was now under weekly scrutiny. (*Id.* at ¶¶ 93, 94.) Additionally, during a meeting with another manager, Plaintiff said that the manager asked her about her mother's nationality and immigration status before discussing Plaintiff's EEO complaint. (*Id.* at ¶¶ 40, 41.)

Defendant argues that these comments were harmless, ambiguous, and not indicative of discrimination in later promotion decisions and performance evaluation scoring. (Dkt. No. 29-1 at 24–25.) Stray remarks and ambiguous comments are not enough to establish a discriminatory intent. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993). However, a reasonable trier of fact could find that these comments did indicate a discriminatory motivation in later promotion and opportunity decisions, some of which were made by these same commenters. (*See, e.g.*, Dkt. No. 30-1 at ¶ 50, 62.) For example, with regard to the President Trump comment, Plaintiff alleges that shortly after the incident, that same manager had a meeting with Plaintiff in which she again said that Plaintiff was under extreme scrutiny and that if Plaintiff made small errors, she could be terminated. (Dkt. No. 30-1 at ¶ 94.)

In an employment discrimination dispute, a plaintiff generally needs to "produce very

little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000). This is because "the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the factfinder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (quoting *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994)). The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Therefore, Plaintiff has demonstrated that discriminatory motivation may have influenced Defendant's employment decisions. Therefore, Defendant's motion for summary judgment on Plaintiff's Title VII and WLAD disparate treatment claims is DENIED.

### C. Retaliation Claims

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in federally protected conduct, including making a charge of unlawful employment practices. 42 U.S.C. § 2000e–3(a). Like disparate treatment claims, retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework. *See Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003). The plaintiff must first make a *prima facie* showing that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between these two events. *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003). The third element requires that the plaintiff show but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Washington law does not require but-for causation, but the plaintiff must show that the protected activity was a substantial factor in the employer's adverse employment decision. *See Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1191 (Wash. Ct. App. 2000).

Plaintiff lodged a formal EEO complaint in April 2014 regarding the lack of support she

received from her managers, being passed over for positions which she alleged she was qualified for, being falsely accused of bad behavior, being transferred against her wishes, and being treated less favorably than Caucasian colleagues. (Dkt. No. 30-1 at 38–39.) Plaintiff alleges that she thereafter experienced adverse employment actions when she was denied promotions in 2015 and 2016 and began receiving poor performance evaluations. (Dkt. No. 30-1 at ¶¶ 60–63; 30-10).

However, even assuming that Plaintiff has met her burden on the first two elements, she has failed to prove causation. When relying on circumstantial evidence, temporal proximity between the protected activity and the adverse employment action is important in determining a causal link. *See Francom*, 991 P.2d at 1191. Plaintiff has not established that the promotion denials were the result of her EEO complaint because there is a lack of temporal proximity between the events. *See Soares-Haae v. Roche*, 220 F. App'x 695, 697 (9th Cir. 2007) (finding that one year between a plaintiff's filing of a series of complaints and the alleged adverse employment action was not sufficient temporal proximity to establish causation). Moreover, Plaintiff's argument that she suffered poor performance evaluations as a result of her protected activity also fails. Plaintiff alleges that the number and frequency of manager criticisms and complaints directed at her increased after she made the complaint and she began receiving poor performance evaluations. (Dkt. Nos. 30 at 16; 30-10.) But Plaintiff has not cited authority that criticisms, complaints, or performance evaluations are adverse employment action. Even if these constitute adverse employment actions, the record is clear that Plaintiff received at least one equally (if not more) negative review(s) prior to making her EEO complaint. (Dkt. No. 25-2 at 46–51.) This fact tends to disprove Plaintiff's argument that her negative reviews were a result of her EEO complaint. When considered with the fact that Plaintiff has failed to prove that criticisms, complaints, and poor performance evaluations constitute cognizable adverse employment actions, Plaintiff has failed to establish a *prima facie* case of retaliation. Therefore, Defendant's motion for summary judgment on these claims is GRANTED.

**D.      Hostile Work Environment Claims**

The analysis for a hostile work environment claim is the same under Title VII and WLAD because Washington adopted the *Morgan* test.[3] *See Antonious v. King Cty.*, 103 P.3d 729, 737 (Wash. 2004). To prevail on a hostile work environment claim, the plaintiff must show: (1) that she was subjected to conduct of a harassing nature based on her race; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Vasquez*, 349 F.3d at 642. To determine whether conduct is sufficiently severe or pervasive, the Court examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 642 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)). Additionally, the "environment must both subjectively and objectively be perceived as abusive." *Vasquez*, 349 F.3d at 642 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Manatt*, 339 F.3d at 798 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal alterations omitted).

Ninth Circuit law establishes a high burden to finding a hostile work environment. *See Manatt*, 339 F.3d at 798–99. For example, in *Draper v. Coeur Rochester, Inc.*, the Ninth Circuit found that the defendant created a hostile work environment where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, called her "gorgeous" and "beautiful" rather than her name, told her about his sexual fantasies and his desire to have sex with her, commented on her "ass," and asked over a loudspeaker if she needed help changing clothes. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105–06 (9th Cir. 1998). In contrast, in *Kortan v. California Youth Authority*, the Ninth Circuit found no hostile work environment

---

[3] It is unclear from the complaint which hostile work environment causes of action Plaintiff is alleging, but it is nonetheless irrelevant because the same test is used.

existed when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in the plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff had other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor. *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1106–07 (9th Cir. 2000).[4]

Here, the comments that Plaintiff has been exposed to and had to endure, while offensive and inappropriate, did not so pollute the workplace that it altered the conditions of her employment. Although there were many comments over the seven-year period that Plaintiff points to (*see generally* Dkt. No. 30-1), some of the more egregious included when a regional manager, after discovering that Plaintiff was getting married, asked in front of others why Plaintiff's family was not donating goats for her dowry; and when co-workers called a traditional Ethiopian meal "barbaric and disgusting." (*Id.* at ¶ 12, 25.) As Defendant points out, some of the comments that Plaintiff complains about were rather ambiguous. (*See id.* at ¶¶ 69, 88, 93, 96.) These comments were made by different people, directed at various events or people. Although the comments are insensitive, they mostly appear to be made in jest and are not directed at hurting, embarrassing, or humiliating Plaintiff. When considered over the course of a 7 year period, these comments are not pervasive enough to amount to a hostile work environment.

Plaintiff also argues that Defendant's employees' inability to specifically articulate Boeing's application of its harassment policy indicates that Defendant facilitates a hostile work environment. To support this claim, Plaintiff points to Defendant's employees' depositions, where the employees arguably answer ambiguously about the application and enforcement of Boeing's workplace harassment policy and affirmative action policy (Dkt. No. 30-16 at 6–9; 30-17 at 9–12; 30-18 at 3–7; 30-19 at 3–16; 30-20; 30-21 at 3–8). This argument is circular—a

---

[4] The court in *Kapu v. Sears, Roebuck & Co.* provided these and other illustrative hostile work environment case summaries. *See Kapu v. Sears, Roebuck & Co.*, Case No. 09–00602, 2010 WL 2943339, slip op. at 8 (D. Haw. 2010).

ORDER
C17-1254-JCC
PAGE - 12

hostile work environment claim requires "conduct" of a harassing nature. *See Vasquez*, 349 F.3d at 642. Boeing employees' inability to precisely respond to hypothetical applications of its policies, or to precisely detail what the policies mean and how they are enforced, does not represent harassing conduct that creates a hostile work environment. Therefore, Plaintiff has not demonstrated that there was any conduct that was so pervasive that a hostile work environment was created. Defendant's motion for summary judgment on these claims is GRANTED.

**E.     Privacy Claim**

To prove invasion of privacy because of the defendant's intrusion upon the plaintiff's seclusion, the plaintiff must prove each of the following elements: (1) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs, (2) a legitimate and reasonable expectation of privacy with respect to that matter or affair, (3) an intrusion that is highly offensive to a reasonable person, and (4) damage proximately caused by the defendant's conduct. *Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001), overruled on other grounds by *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). Further, "[t]he intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen." *Fisher v. Dep't of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005).

Plaintiff argues that her manager asking her about the nationality and residency of her mother is an intrusion upon Plaintiff's seclusion. (*See* Dkt. Nos. 30 at 17; 30-1 at ¶ 40.) The Court concludes that Plaintiff's manager did not intentionally intrude on Plaintiff's privacy by asking her a question that she either voluntarily answered or chose not to answer. Nor has Plaintiff shown that this information was even private. Because Plaintiff's manager asking a question is neither an intentional intrusion nor private, Defendant is entitled to summary judgment. Therefore, Defendant's motion for summary judgment on this claim is GRANTED.

**F.     Negligent Infliction of Emotional Distress Claim**

A plaintiff claiming NIED must prove negligence—duty, breach, causation, and damage—with the additional requirement of proving damages by objective symptomatology.

*Kloepfel v. Bokor*, 66 P.3d 630, 634 (Wash. 2003). In the employment context, a plaintiff cannot bring a claim for NIED based on the employer's disciplinary acts or a personality dispute. *Chea v. Men's Wearhouse, Inc.*, 932 P.2d 1261, 1264–65 (Wash. Ct. App. 1997). Employers do not have a duty to "use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *See Snyder v. Med. Serv. Corp. of E. Wash.*, 988 P.2d 1023, 1028–29 (Wash. Ct. App. 1999) (quoting *Bishop v. State of Washington*, 889 P.2d 959, 963 (Wash. Ct. App. 1995)). Instead, employers are permitted to handle workplace disputes, even where their actions may be stressful to impacted employees. *Id.* at 1028. If an employer's conduct, although "rude, boorish, and mean-spirited," occurs in the workplace setting and is in furtherance of legitimate work-related topics, the employer cannot be liable for NIED. *See Snyder*, 988 P.2d at 1029.

However, a supervisor or manager's conduct that goes beyond the scope of handling a workplace dispute may be sufficient to establish NIED. *See Strong v. Terrell*, 195 P.3d 977, 983–84 (Wash. Ct. App. 2008) (finding NIED claim survived summary judgment where supervisor made demeaning comments about the plaintiff's hair color, mocked the plaintiff's house, mocked the plaintiff's husband's employment, called the plaintiff a "bum mother," and spit in the plaintiff's face as he screamed at her).

Although many of the comments Plaintiff complains of were in furtherance of work-related activities (*see, e.g.*, Dkt. No. 30-1 at ¶ 12), Plaintiff has provided evidence of some comments that went beyond handling a workplace dispute. For example, the regional manager's comment about why her family was not donating goats for her dowry and her other manager's question about her mother's nationality have nothing to do with legitimate work-related activities. (*See* Dkt. No. 30-1 at ¶¶ 25, 40.) Viewing the facts in the light most favorable to Plaintiff, a reasonable trier of fact could conclude that some of the comments made to or about Plaintiff went beyond the scope of handling a workplace dispute and that, therefore, Defendant's duty to Plaintiff was breached. Therefore, because there is a genuine dispute of material fact as to

whether Plaintiff was subjected to NIED, Defendant's motion for summary judgment as to this claim is DENIED.

### G. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel*, 66 P.3d at 632. An IIED claim must be based on behavior that is so extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)).

The Court agrees with Defendant that Plaintiff has not provided any evidence that Defendant engaged in conduct so extreme as to "go beyond all possible bounds of decency." *See id.* The incidents that Plaintiff lists in her reply brief in opposition to Defendant's motion for summary judgment—that one manager "bullied" Plaintiff into returning to a meeting before Plaintiff could readjust her clothing during a period of breastfeeding when her breasts began to leak (Dkt. No. 30-1 at ¶ 72); and that this same manager told Plaintiff, on the day of President Trump's election, that she was under "weekly scrutiny now" (Dkt. No. 30-1 at ¶ 93)—do not "go beyond all possible bounds of decency." While these incidents, taken as true and intended as Plaintiff perceived them, are insulting or embarrassing, no reasonable trier of fact could find that they are "extreme and outrageous." Therefore, because these comments are not "extreme and outrageous" as a matter of law, Defendant is entitled to summary judgment on its IIED claim. Defendant's motion for summary judgment with regard to this claim is GRANTED.

### H. Punitive Damages

Punitive damages are available in cases of intentional discrimination where the defendant behaved with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981; *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999) (quoting 42 U.S.C. § 1981a(b)(1)). "The terms 'malice' or 'reckless indifference' pertain

ORDER
C17-1254-JCC
PAGE - 15

1 to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id*. at 535.

As discussed above, the Court has denied Defendant's motion for summary judgment with regard to the disparate treatment claims. A reasonable trier of fact could find that Defendant discriminated against Plaintiff based on her race, national origin, and/or color. It follows that, if Defendant did indeed discriminate against Plaintiff on one or more of these bases, Defendant may have acted knowing that it was or may have been violating federal law. Defendant's mental state is properly determined at trial by the trier of fact. Therefore, because there is a genuine dispute of material fact with regard to Defendant's mental state, Defendant's motion for summary judgment with regard to this claim is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 29-1) is GRANTED in part and DENIED in part.

1. Defendant's motion for summary judgment on Plaintiff's Title VII and WLAD disparate treatment claims is DENIED.
2. Defendant's motion for summary judgment on Plaintiff's Title VII and WLAD retaliation claims is GRANTED.
3. Defendant's motion for summary judgment on Plaintiff's Title VII and WLAD hostile work environment claims is GRANTED.
4. Defendant's motion for summary judgment on Plaintiff's invasion of privacy claim is GRANTED.
5. Defendant's motion for summary judgment on Plaintiff's negligent infliction of emotional distress claim is DENIED.
6. Defendant's motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is GRANTED.
7. Defendant's motion for summary judgment on Plaintiff's punitive damages claim is

DENIED.

DATED this 2nd day of October 2018.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C17-1254-JCC
PAGE - 17